# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK STEVEN ONDRACEK,<br><br>             Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant.<br>_____/ | Case No.  1:15-cv-01308-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>**(Doc. 1)** |

On August 26, 2015, Plaintiff Mark Steven Ondracek ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits. (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.[1]

For the reasons provided herein, the Court REVERSES the final decision of the Commissioner and REMANDS this matter for further proceedings.

## I.   BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on April 9, 1960, and is currently 56 years old. (Administrative Record ("AR")

---
[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7 & 8.)

200.) Plaintiff has a ninth-grade education and worked as a truck driver from 1984 to 2011. (AR 225.)

On April 22, 1996, Plaintiff received a computerized tomography ("CT") scan at Fresno Imaging Center. (*See* AR 285–86.) The radiologist who administered this CT scan provided the following results: "[a]symmetrical transitional lumbosacral vertebral body," "[b]ulging disc, L4-5 and L5-S1," and "[b]ulging disc and hypertrophic spurring at S1-2." (AR 285.)

Plaintiff was examined three times at Bautista Medical Group, Inc. in Fresno, California between 2010 and 2012. The progress notes for each of these visits state that Plaintiff had limited range of motion in his back. (*See* AR 291–95.)

On December 7, 2011, Plaintiff filed a claim for disability insurance benefits, in which he alleges that he became disabled on July 1, 2010. (AR 200–01.) Plaintiff stated that the following conditions limit his ability to work: back injury, gross anxiety, and nervousness. (AR 224.)

The Social Security Administration denied Plaintiff's disability claim initially on May 17, 2012, (AR 121–24), and again on reconsideration on January 10, 2013, (AR 131–35). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR 138–39.)

On January 8, 2014, the ALJ held a hearing regarding Plaintiff's disability claim (the "Hearing"). (AR 23–70.) Plaintiff was represented by counsel at this Hearing. (*See* AR 23.)

During the course of the Hearing, Plaintiff testified that his physician recommended that Plaintiff "learn[] yoga" as "additional treatment." (AR 41.) Plaintiff also testified that he did not have "health insurance." (AR 40–41.) In response to a question as to whether his physicians "ever talked about surgery or sending [Plaintiff] to any kind of neurosurgeon, or orthopedic surgeon," Plaintiff testified that he did not have "health care" and "need[ed] to be able to go in and have the X-rays done or whatever it takes to figure out what's going on." (AR 42.) Plaintiff also testified that his physician "want[ed] to" refer Plaintiff "out for any kind of pain management" if Plaintiff "had health care." (AR 42–43.)

Plaintiff also testified during the Hearing that he walked his dog "around the trailer park" for ten minutes each day and, on some days, he walked his dog for "two [ten] minute segments."

(AR 43–44.) Plaintiff further testified that he drove his car for "about" fifteen minutes "four times a month" to "either the store or . . . doctor[] appointments." (AR 44–45.)

Following the Hearing, the ALJ found that Plaintiff was not disabled in a decision dated February 28, 2014. (AR 6–22.) In her decision, the ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520. (*See* AR 9–18.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since July 1, 2010, the alleged onset date." (AR 11.) At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease, anxiety disorder, substance abuse disorder, learning disorder, and cognitive disorder." (AR 11.) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 11.)

The ALJ next found that Plaintiff has the residual functional capacity ("RFC") "to perform a wide range of medium work as defined in 20 [C.F.R.] 404.1567(c)," except Plaintiff is limited to the following: "lifting-carrying 50 pounds occasionally and 25 pounds frequently," "sitting six hours and standing-walking six hours in an eight-hour workday," "frequent postural movements," "simple repetitive tasks," "no more than minimal social interaction," and "no public contact." (AR 14.) In the course of the RFC analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 15.) However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in [the ALJ's] decision." (AR 15.) The ALJ then provided the following discussion regarding her credibility determination:

> [Plaintiff] has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Plaintiff] reported that he is able to clean up after his dog. Additionally, he is able do [sic] errands, such as grocery shopping and walking his dog . . . .
>
> Although [Plaintiff] has received treatment for the allegedly disabling impairment, that treatment has been essentially routine and/or conservative in nature. Despite his allegations of a major back impairment, [Plaintiff] has had [sic] not had surgery. Mostly recently [sic], his doctor recommended yoga to relieve his back pain.

> Turning to the medical opinions, the objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those reported above.
>
> Fariba Vesali, M.D., a State agency consultative examiner, stated that [Plaintiff] is limited to lifting-carrying 50 pounds occasionally and 25 pounds frequently. He is limited to frequent postural activities, but has no manipulative limitations or workplace environmental limitations . . . .
>
> R. Fast, M.D., and W. Jackson, M.D., State agency medical consultants, reviewed [Plaintiff's] medical records and found that [Plaintiff] is able to lift and carry 50 pounds occasionally and 25 pounds frequently. The doctors opined [Plaintiff] can stand-walk and sit for about six hours each in an eight-hour workday and has unlimited push-pull capabilities. The doctors also found [Plaintiff] can climb, balance, stoop, kneel, crouch, and crawl frequently. The doctors also found no manipulative, visual, communicative, and environmental limitations . . . .
>
> The opinions Dr. Vesali, Dr. Fast, and Dr. Jackson [sic] are given great weight. The limitations noted by the doctors are well supported with specific references to medical evidence. The opinions are internally consistent as well as consistent with the evidence as a whole, specifically [Plaintiff's] normal gait and postural presentation. The opinions are also consistent with [Plaintiff's] activities of daily living, which include doing errands, such as grocery shopping and walking his dog.
>
> Mahendra Nath, M.D., an examining physician, stated in 1996 that [Plaintiff] has no radicular symptoms or neurological deficits. The doctor instructed [Plaintiff] to do therapeutic back exercises and to avoid repetitive bending, stooping, and heavy lifting activities . . . . The undersigned need not consider this opinion because it was issued about 14 years before [Plaintiff's] alleged onset date. Additionally, it does not reflect up to date medical exams and evidence regarding [Plaintiff's] back impairment.

(AR 16.)

At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work." (AR 17.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 17.) Ultimately, the ALJ determined that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (AR 18.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 5.) On June 22, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–3.)

4

Plaintiff then filed the Complaint in this Court on August 26, 2015. (Doc. 1.) Plaintiff filed his opening brief on August 8, 2016, (Doc. 17), Defendant filed an opposition brief on November 7, 2016, (Doc. 21), and Plaintiff filed his reply brief on November 28, 2016, (Doc. 22). As such, this matter is fully briefed and ready for disposition.

## II.  LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

B.   **Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when

the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### III.   DISCUSSION

Plaintiff argues, in relevant part, that the ALJ committed error in assessing the credibility of Plaintiff's statements when determining his RFC. (*See, e.g.*, Doc. 17 at 11–14.) For the reasons that follow, the Court agrees with Plaintiff's position.

**A.   Overview of Analysis**

The ALJ determines a claimant's RFC before step four of the sequential evaluation analysis. *See, e.g.*, 20 C.F.R. §§ 404.1520(e) & 416.920(e). A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* §§ 404.1545(a)(1) & 416.945(a)(1). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ." *Robbins*, 466 F.3d at 883. "The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)). Additionally, "[t]he ALJ can . . . decide what weight to give to what evidence as long

as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id.* (quoting *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir. 1996)). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.* (alterations in original) (quoting *Smolen*, 80 F.3d at 1282); *cf. Reddick*, 157 F.3d at 722 ("Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." (citing *Bunnell*, 947 F.2d at 343)). Additionally, a claimant is not required to "produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282).

In this case, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 15.) As such, the first step in this credibility analysis is satisfied.

As to the second step, the ALJ did not reference any evidence of malingering. (*See* AR 9–18.) Thus, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281); *see, e.g.*, *Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant

not credible by making specific findings as to credibility and stating clear and convincing reasons for each." (citation omitted)). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345–46).

The clear and convincing standard is "not an easy requirement to meet" and it "is the most demanding [standard] required in Social Security cases." *Garrison*, 759 F.3d at 1015 (citation omitted). "General findings are insufficient" to satisfy this standard. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "[R]ather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834); *see, e.g.*, *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) ("To support a lack of credibility finding, the ALJ [is] required to 'point to specific facts in the record which demonstrate that [the claimant] is in less pain than she claims.'" (quoting *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993))); *cf. Burrell*, 775 F.3d at 1138 (stating that the Ninth Circuit's "decisions make clear that [courts] may not take a general finding . . . and comb the administrative record to find specific" support for the finding).

The ALJ in the present matter found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely credible." (AR 15.) The ALJ provided the following three bases for this finding: (1) Plaintiff "describe[d] daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations;" (2) Plaintiff has received "essentially routine and/or conservative" treatment; and (3) "the objective findings in this case fail to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations." (AR 16.) The Court shall address each rationale, in turn.

**B.     Daily Activities**

Plaintiff first argues that substantial evidence does not support the ALJ's finding that Plaintiff's daily activities are inconsistent with his alleged limitations. (Doc. 17 at 12–13.) The Court agrees with Plaintiff's position.

"One does not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (citations omitted). "Only if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [the claimant's] credibility." *Reddick*, 157 F.3d at 722.

Here, the ALJ stated that Plaintiff's "described daily activities . . . are not limited to the extent one would expect" because Plaintiff "reported that he is able to clean up after his dog" and "do errands, such as grocery shopping and walking his dog." (AR 16.) This rationale is deficient for two reasons.

First, the Ninth Circuit has noted that similar minimal daily activities have no bearing on a claimant's credibility. *See, e.g.*, *Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Furthermore, the ALJ failed to describe *how* these minimal tasks impugn Plaintiff's credibility. (*See* AR 14–17.) Absent any further pertinent discussion in the ALJ's decision, the record reflects only that the ALJ impermissibly penalized Plaintiff's credibility due to Plaintiff's minimal efforts to lead a normal life.

Second, the ALJ failed to describe how these tasks are transferrable to a work setting. "[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (alteration in original) (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

In this case, the ALJ failed to describe how Plaintiff's minimal tasks occupied a substantial part of his day, or provide any discussion, whatsoever, as to how those tasks are transferable to a work setting. (*See* AR 14–17.) Indeed, the record reflects that Plaintiff walked his dog for no more than ten minutes usually once per day, (AR 44), and went grocery shopping no more than four times each month, (*see* AR 44–45). The ALJ's failure to address the minimal extent of these tasks and whether they are transferable demonstrates that the ALJ's credibility determination regarding Plaintiff's daily activities is not supported by substantial evidence. *See, e.g.*, *Orn*, 495 F.3d at 639 (finding that substantial evidence did not support the ALJ's conclusion regarding the claimant's credibility where "there [was] neither evidence to support that [the claimant's] activities were transferable to a work setting nor proof that [the claimant] spent a substantial part of his day engaged in transferable skills").

Based on the foregoing, the Court finds that substantial evidence does not support the ALJ's credibility determination pertaining to Plaintiff's daily activities.

**C.     Treatment**

Plaintiff next argues that substantial evidence does not support the ALJ's findings regarding the import of Plaintiff's treatment on his credibility. (*See, e.g.*, Doc. 17 at 13–14.) The Court again agrees with Plaintiff's position.

"[T]he ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)); *cf. Parra v.*

11

*Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995))). "According to agency rules, 'the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.'" *Molina*, 674 F.3d at 1113 (quoting SSR 96–7p). "Moreover, a claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ provided two separate rationale as to why Plaintiff's treatment history demonstrated that his statements regarding the alleged intensity, persistence, and limiting effects of his symptoms were not credible: (1) "[d]espite his allegations of a major impairment, [Plaintiff] has had [sic] not had surgery;" and (2) Plaintiff's "treatment has been essentially routine and/or conservative in nature" and, "[m]ostly recently [sic], his doctor recommended yoga to relieve his back pain." (AR 16.) However, at the Hearing, Plaintiff provided a good reason for not seeking or receiving further treatment—lack of health insurance. Specifically, Plaintiff testified during the Hearing that he did not seek further treatment, such as "[x]-rays . . . or whatever it takes to figure out what's going on" due to a lack of health insurance. (AR 40–42.) Additionally, Plaintiff testified that the same doctor who recommended yoga also wanted to "refer [Plaintiff] out for . . . pain management" if he "had health care." (AR 42–43.)

As noted by the Ninth Circuit, a claimant's "failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding." *Orn*, 495 F.3d at 638; *see, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (finding that the claimant's "minimal treatment regime is not a proper basis for finding him non-credible" where "his insurance [did] not cover" an additional medication); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (finding that "the fact that [the claimant] was not taking medication [was] not a clear and convincing reason for discrediting her symptom testimony"

because the claimant "had no insurance and could not afford treatment"); *cf. Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). Based on this established case law, the ALJ erred by impugning Plaintiff's credibility due to his level of treatment where the record included uncontroverted evidence that Plaintiff did not seek or receive further treatment because of a lack of insurance. As such, the Court finds that the ALJ's credibility determination based on Plaintiff's level of treatment was not supported by substantial evidence.

**D.     Objective Findings**

Plaintiff's final argument is that the ALJ erred in her credibility determination when she found that objective evidence did not support Plaintiff's allegations of symptoms and limitations. (*See, e.g.*, Doc. 17 at 14.) The Court agrees with Plaintiff's position for two reasons.

First, objective evidence, by itself, is insufficient to impugn a claimant's credibility. Of course, a "lack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, the Ninth Circuit has repeatedly emphasized that, "[i]n evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain." *Id.* at 680 (emphasis added) (citation omitted); *see, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence . . . ."); *see also* SSR 96–7p ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."); *Pheng v. Comm'r of Soc. Sec.*, No. 1:12–cv–00582–JLT, 2013 WL 1623596, at *4 (E.D. Cal. Apr. 15, 2013) ("[A]n ALJ may not base an adverse credibility determination solely upon the medical evidence." (citations omitted)). "The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone." *Burch*, 400 F.3d at 680.

Here, the Court previously found that the ALJ's other stated rationale for rejecting Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not supported by substantial evidence. As such, the sole remaining basis for the ALJ's adverse credibility determination is the ALJ's discussion regarding objective evidence. (*See* AR 16.) This evidence, while a pertinent factor, cannot be the sole basis for an adverse credibility finding. *See, e.g.*, *Burch*, 400 F.3d at 681. Consequently, the ALJ's credibility finding based on the objective evidence is not supported by substantial evidence. *See, e.g.*, *Pheng*, 2013 WL 1623596, at *4–5 (noting that the ALJ made an adverse credibility determination based solely on "the objective medical evidence" and therefore finding that "the credibility determination [could not] be upheld" because "the ALJ failed to set forth clear and convincing reasons supported by substantial evidence").

Second, the record reflects that the ALJ disregarded pertinent medical evidence in her credibility determination. The ALJ accorded "great weight" to the opinions of doctors who found that Plaintiff "is limited to frequent postural activities," has "no manipulative" limitations, and "can climb, balance, stoop, kneel, crouch, and crawl frequently." (AR 16.) However, the ALJ failed to discuss in their credibility discussion the contrary results of a 1996 CT scan, (*See* AR 16), which found that Plaintiff had an "[a]symmetrical transitional lumbosacral vertebral body," bulging discs at L4-5 and L5-S1, and a bulging disc and "hypertrophic spurring at S1-2." (AR 285.) Additionally, the ALJ failed to discuss Plaintiff's relatively recent progress notes from Bautista Medical Group, Inc., which state that Plaintiff had a limited range of motion. (AR 291–95.) The ALJ's failure to discuss this contrary evidence and the weight the ALJ accorded this evidence, if any, constituted error.[2] *See, e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.

---

[2] Defendant argues that the results of the 1996 CT scan actually support the ALJ's credibility determination because "Plaintiff worked for many years after 1996." (Doc. 21 at 9.) The ALJ was free to make this statement—or any statement regarding the weight accorded to this examination—in the decision. Indeed, the ALJ made a similar statement regarding why she declined to consider a different 1996 examination. (*See* AR 16 (providing the ALJ's statement that she "need not consider" a 1996 opinion from Mahendra Nath, M.D. "because it was issued about 14 years before the claimant's alleged onset date").)
However, the ALJ failed to discuss the results of Plaintiff's 1996 CT scan in her credibility determination, or describe what weight, if any, the ALJ accorded to this evidence. (*See* AR 10–19.) Absent any relevant statement from the ALJ regarding this evidence, this Court will not "affirm the decision of [the ALJ] on a ground that the [ALJ] did not invoke in making [her] decision." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)); *see, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th

1996) (finding that the ALJ erred by "ignor[ing] medical evidence of [the claimant's] other impairments").

In summary, the Court finds that each of the ALJ's stated bases for her credibility determination are not supported by substantial evidence. The Court therefore finds that substantial evidence does not support the ALJ's ultimate credibility determination and, consequently, this error was not harmless.[3] The Court therefore finds that reversal of the ALJ's decision and remand of this case are warranted.[4]

### IV.   CONCLUSION

For the reasons provided above, the Court REVERSES the final decision of the Commissioner and REMANDS this matter for further proceedings.

IT IS SO ORDERED.

Dated:   **February 22, 2017**                              /s/ *Sheila K. Oberto*
                                                                              UNITED STATES MAGISTRATE JUDGE

---

Cir. 2009) ("Long-standing principles of administrative law require [courts] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." (citations omitted)).

[3] Once the Court concludes that some "of the ALJ's reasons supporting his adverse credibility finding are invalid, [it] must determine whether the ALJ's reliance on such reasons was harmless error." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004)). Under this analysis, an ALJ's errant credibility analysis "is deemed harmless and does not warrant reversal" so "long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion.'" *Id.* (alterations in original) (quoting *Batson*, 359 F.3d at 1197).
   Here, the Court finds that substantial evidence does not support the ALJ's ultimate credibility analysis. As such, this finding negates the validity of the ALJ's ultimate credibility conclusion. The Court therefore finds that the ALJ's errant credibility analysis was not harmless.

[4] As the Court finds that reversal and remand are warranted based on the ALJ's errant credibility determination, it does not reach Plaintiff's additional arguments regarding the ALJ's analysis at step five of the sequential evaluation process. (*See* Doc. 17 at 15–17; *cf. Willmett ex rel. A.P. v. Astrue*, No. 2:10–cv–01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").